**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 13-4035

UNITED STATES OF AMERICA,

        Plaintiff – Appellee,

  v.

CHRISTOPHER MYERS,

        Defendant - Appellant.

Appeal from the United States District Court for the District of Maryland, at Greenbelt. Roger W. Titus, Senior District Judge. (8:11-cr-00614-RWT-1)

Submitted: January 31, 2014        Decided: March 10, 2014

Before MOTZ, SHEDD, and DIAZ, Circuit Judges.

Affirmed by unpublished per curiam opinion.

James Wyda, Federal Public Defender, Joanna Silver, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Baltimore, Maryland, for Appellant. Rod J. Rosenstein, United States Attorney, LisaMarie Freitas, Special Assistant United States Attorney, Kristi O'Malley, Assistant United States Attorney, Greenbelt, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Christopher Myers was charged in a three-count superseding indictment with knowingly receiving child pornography, in violation of 18 U.S.C. § 2252A(a)(2) (2012), knowingly transporting child pornography, in violation of 18 U.S.C. § 2252A(a)(1) (2012), and knowingly possessing child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B) (2012). A jury convicted Myers on all counts, and he received sixty-month concurrent sentences on each. On appeal, he argues that the evidence was insufficient to prove the he knowingly received child pornography. He also contests the district court's evidentiary ruling excluding the expert witness for which he gave notice on the first day of trial. Finding no error, we affirm.

Myers was identified as part of an investigation into the sale of child pornography via internet websites. The count that Myers challenges states that, on or about October 22, 2006, through on or about November 20, 2006, Myers knowingly received child pornography and material that contained child pornography as defined by 18 U.S.C. § 2256(8) (2012). This time period coincides with a month-long membership that Myers purchased to a child pornography website called Sick Child Room. In 2007, after his subscription to Sick Child Room had ended, Myers purchased a new laptop computer, which authorities seized

in 2010. Myers does not dispute that the relevant visual images found on the computer constitute child pornography. And, the parties stipulated that the images depict real, identified victims, and were produced outside the State of Maryland. Therefore, the only element Myers has contested at trial and on appeal is whether he knowingly received child pornography between October 22, 2006, and November 20, 2006.

Myers argues that the Government relies on the "extreme attenuation between the images available for Myers to access in 2006 and the images found on his new computer in 2010" and contends that the Government does not have any other evidence that Myers received pornography during that period. In sum, Myers argues that the evidence is all circumstantial and is insufficient to support knowing receipt of images from Sick Child Room in 2006.

There is no question that Myers "received" child pornography; the question is "whether that receipt was knowing." United States v. Winkler, 639 F.3d 692, 699 (5th Cir. 2011). See also United States v. Whorley, 550 F.3d 326, 334 (4th Cir. 2008) (observing that there was "no . . . question" that a defendant "received" child pornography where the defendant "actively used a computer to solicit obscene material through numerous and repetitive searches and ultimately succeeded in obtaining the materials he sought"); United States v. Osborne,

3

935 F.2d 32, 34 n.2 (4th Cir. 1991) (observing that a defendant had received child pornography where he "achieved the power to exercise dominion and control over them").

Because 18 U.S.C. § 2252A does not criminalize inadvertent receipt or possession of illicit materials, the Government must present proof of at least circumstantial evidence of the requisite knowledge.  See United States v. Ramos, 685 F.3d 120, 131 (2d Cir.), cert. denied, 133 S. Ct. 567 (2012) (collecting cases); Winkler, 639 F.3d at 696-99 (same). Thus, courts have reasoned that the mere presence of illicit materials in a computer's temporary internet cache, standing alone, is insufficient to establish knowing receipt, given that the files could have been saved there without the user's knowledge.  See, e.g., United States v. Flyer, 633 F.3d 911, 919 (9th Cir. 2011); United States v. Dobbs, 629 F.3d 1199, 1201 (10th Cir. 2011).  By contrast, a defendant's attempts to delete a computer's temporary internet files and browsing history are circumstantial evidence supporting knowing receipt of child pornography, given that a defendant's scrubbing of the evidence indicates some degree of prior awareness that images viewed online would be saved to his computer.  See, e.g., Ramos, 685 F.3d at 132; United States v. Bass, 411 F.3d 1198, 1207 (10th Cir. 2005).   Some courts have also suggested that, where a defendant repeatedly sought out child pornography, his conduct

4

may serve as circumstantial evidence that he knowingly received it, regardless of the fact that his computer contains such images only in its temporary internet cache or in unallocated spaces.  See, e.g., United States v. Pruitt, 638 F.3d 763, 766 (11th Cir. 2011).

Whether a defendant knew that files viewed online would be saved to his computer is a close question only where there is some indication that the images were saved there without his knowledge.  If, for example, the evidence shows only that the images were saved to the computer's cache or temporary internet folders and that the defendant made no effort to remove them, or that the images were otherwise saved automatically to locations inaccessible to a computer user, there may be some reason to believe that the defendant did not "knowingly" receive the images.

We conclude that, here, this issue is not close.  The core of Myers' defense was that the Government only presented circumstantial evidence that Myers knowingly received the files.  He argues it is unreasonable to believe that he would have uploaded images to transfer them to a new computer only to later delete most of them.  But the facts adduced at trial render this defense unavailing.

As for circumstantial evidence of Myers' knowledge, investigators discovered a plethora of child pornography on

5

Myers' computer, thus establishing that it was not by mistake or error that the files were downloaded. See Ramos, 685 F.3d at 132 (holding that defendant had knowingly received child pornography where he had viewed 140 images of child pornography and had admitted to law enforcement that they would probably find child pornography on his computer); Pruitt, 638 F.3d at 767 (holding that defendant had knowingly received child pornography where he had repeatedly searched online for child pornography, despite the fact that all of the images were located only in his computer's temporary internet cache and unallocated space).

The jury learned that Myers created an innocuous folder name of "SATCOM," a title related to his profession, to store most of his directory of child pornography, clearly indicating that he knew illegal images would be saved to his hard drive. Myers also created desktop shortcuts to his file-share programs' saved/shared folders. The Fifth Circuit has observed that a defendant's downloading of "dozens" of child pornography images, stashing the files in unusual or password-protected locations on his hard drive, and creating a file containing links to child pornography websites indicate "a pattern of child pornography receipt" suggesting that the defendant also knowingly downloaded the particular files upon which the receipt count was based. Winkler, 639 F.3d at 699. The same principle applies here.

6

Finally, the computer forensic examiner who conducted the investigation and search of Myers' computer found over a thousand files that were identical to child pornography images available to members of the Sick Child Room website at the time that Myers had access to it. While Myers argues that these images were also available in file sharing programs and that he did not necessarily download them himself, he ignores the evidence found by the forensic examiner that the same files on Myers' computer had information consistent with their being uploaded to his computer from an external device. We thus conclude that the evidence was sufficient to find that Myers knowingly received child pornography during the relevant time period.

Next, Myers contests the district court's evidentiary ruling excluding the defense's expert witness, an optometrist, who would have opined on Myers' condition of ocular albinism. On the first day of trial, defense counsel gave notice to the Government of Myers' intent to call the optometrist as an expert witness. Myers argued that his impairment made it less likely that he would commit a visual offense, such as the possession and distribution of pornography. He also argued that the jury's observations of his appearance and actions during trial (such as involuntary eye movements and use of a monocular vision aid) would be confusing and prejudicial without testimony to explain

7

his condition to the jury. The Government responded that because the proposed testimony involved a medical expert, Myers was required to give notice prior to trial so that the Government could have time to obtain its own expert and prepare for cross-examination. The district court did not permit the optometrist to testify, concluding that allowing the expert testimony would prejudice the Government. The court, however, permitted other defense witnesses, including Myers' mother, to testify regarding their personal knowledge of Myers' limited vision and use of a monocular for vision correction.

We review a district court's ruling to exclude an expert witness based on the timeliness of notice for an abuse of discretion. See United States v. Holmes, 670 F.3d 586, 598 (4th Cir.), cert. denied, 133 S. Ct. 426 (2012) (noting that, because Fed. R. Crim. P. 16 is silent as to the timing of expert witness disclosures, the appellate court reviews the district court's timeliness determination for abuse of discretion).

Federal Rule of Criminal Procedure 16(b)(1) sets forth a defendant's duty to disclose information to the Government. Under Rule 16(b)(1)(C), which deals with expert witnesses, "the defendant must, at the government's request, give to the government a written summary of any testimony that the defendant intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence as evidence at trial, if—(i) the defendant requests

8

disclosure under subdivision (a)(1)(G) and the government complies; or (ii) the defendant has given notice under Rule 12.2(b) of an intent to present expert testimony on the defendant's mental condition." Under Fed. R. Crim. P. 16(d)(2)(C), "[i]f a party fails to comply with this rule, the court may prohibit that party from introducing the undisclosed evidence." "In addition to this specific authority, district courts are to exercise their sound discretion in all rulings related to the admission and exclusion of evidence, and this Court will not reverse the decision to exclude such evidence absent abuse of that discretion." Holmes, 670 F.3d at 598 (citing United States v. Stitt, 250 F.3d 878, 896 (4th Cir. 2001)).

The Government sought to exclude Myers' expert because of its inability to prepare a timely response to the expert's testimony; the insufficiency of the notice under Rule 16; and prejudice to its case (based on its inability to prepare). Myers asserts that the Government was on notice that the defense might call an expert witness because the defense relied on Myers' ocular albinism in challenging the admission of the seized computer, arguing that he could not read the written consent provided to him.

"[T]he case law is clear that it is not an abuse of discretion for a trial court to disallow expert testimony where

9

a late proffer of evidence by the defense substantially prejudices the government in its ability to find its own expert and conduct similar testing." United States v. Dorsey, 45 F.3d 809, 816 (4th Cir. 1995). In United States v. Curry, 977 F.2d 1042, 1052 (7th Cir. 1992), the Seventh Circuit held that the district court did not err in excluding expert testimony regarding the reliability of eyewitness identifications, because, among other things, the defendants gave the government only four days' notice of their intent to call their witnesses.

Similarly, we hold that the district court did not abuse its discretion in excluding Myers' expert witness. See United States v. Johnson, 617 F.3d 286, 292 (4th Cir. 2010) ("A court has abused its discretion if its decision 'is guided by erroneous legal principles' or 'rests upon a clearly erroneous factual finding.'" (quoting Brown v. Nucor Corp., 576 F.3d 149, 161 (4th Cir. 2009))) (internal quotation marks omitted).

We therefore affirm the judgment. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

AFFIRMED